Tommy SF Wang (SBN: 272409)
Annie W. Yang (SBN: 295289)
Ka In Chan (SBN:322578)
Wang IP Law Group, P.C.
18645 E. Gale Ave. Ste #205
City of Industry, CA 91748
Telephone: (888) 827-8880
Facsimile: (888) 827-8880
Email: twang@thewangiplaw.com; awong@thewangiplaw.com;
kchan@thewangiplaw.com

Attorneys for Defendant
John Doe subscriber assigned IP address 172.115.62.221

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STRIKE 3 HOLDINGS, INC,<br><br>PLAINTIFF,<br>vs.<br><br>JOHN DOE SUBSCRIBER ASSIGNED IP ADDRESS 172.115.62.221,<br><br>DEFENDANT. | **Case No.: 5:18-cv-02496-GW-SP**<br><br>**DEFENDANT JOHN DOE'S NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA TO CHARTER SEEKING IDENTITY INFORMATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO QUASH**<br><br>Date: March 26, 2019<br>Time: 10:00 AM<br>Dept: Courtroom 3<br>Honorable Sheri Pym |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 26, 2019, at 10:00 am before the Honorable Sheri Pym of the United States District Court for the Central District of California, Defendant John Doe subscriber IP address 172.115.62.221 ("John

Doe" or "Defendant") will and hereby does move the Court, pursuant to Rule 45 of the Federal Rules of Civil Procedure, to quash the subpoena served by Plaintiff Strike 3 Holdings, LLC ("Strike 3 Holdings" or "Plaintiff") on third party Charter Communications, Inc ("Subpoena"). The Subpoena was issued on December 19, 2018 in a civil action in the Central District of California, captioned *Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 172.115.62.221*, (C.D. Cal. 5:18-cv-02496-GW-SP). The subpoena seeks the identity of the moving party, John Doe.

The Subpoena should be quashed because (1) the subpoena presents an undue burden under Rule 45 and the Order would protect John Doe under Rule 26; and (2) the subpoena will not identify the offender and accordingly does not advance plaintiff's claim; (3) it seeks information in violation of a Third-Party Internet user's right to privacy. This Motion is based upon this Notice of Motion and Motion to Quash, the accompanying Memorandum of Points and Authorities, the Proposed Order, all pleadings and papers on file in this action, and upon such other matters as may be presented to the Court at the time of the hearing.

DATED:      January 24, 2019                    Respectfully submitted,

Songfong Tommy Wang
Wang IP Law Group, P.C.

Attorneys for Defendant,
John Doe subscriber assigned
IP address 172.115.62.221

**DEFENDANT'S MOTION TO QUASH SUBPOENA**

2

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.    INTRODUCTION

Movant-defendant John Doe subscriber assigned IP address 172.115.62.221 ("John Doe" or "Defendant"), by and through counsel, and pursuant to Federal Rule of Civil Procedure 45(c)(3), moves this Court for an Order Quashing the Subpoena issued to and served upon Charter Communications, Inc. ("Charter"), which is this defendant's Internet Service Provider ("ISP"), and which seeks documents that identify this defendant's name and address. The Subpoena is dated December 19, 2018, and returnable February 27, 2019.

Defendant John Doe submits that such an Order is warranted because (1) the subpoena presents an undue burden under Rule 45 and the Order would protect John Doe under Rule 26; (2) the subpoena seeks information not directed to advancing plaintiff's claim; (3) per Rule 26(b)(1), the subpoena "is not relevant to any party's claim or defense;" (4) the subpoena violates John Doe's right of privacy.

### II.    STATEMENT OF FACT

#### A. Relevant Procedural History

Plaintiff filed a Complaint on November 27, 2018 (ECF No.1), against John Doe subscriber assigned IP address 172.115.62.221, alleging copyright infringement. Plaintiff alleges that Defendant downloaded Plaintiff's works consisting of adult films ("Provocative Material").

On December 11, 2018, Plaintiff Strike 3 Holdings, LLC filed an ex-parte application for leave to serve a third-party subpoena on Charter prior to a Rule 26(f) conference. On December 17, 2018, the court granted Plaintiff's application, but with certain additional protective measures.

#### B. Overview of Mass "John Doe" Litigation

This case is the latest installment in a wave of mass "John Doe" copyright troll infringement lawsuits that have swept through district courts

around the country. Certain features have become hallmarks of this brand of litigation: after obtaining the ex parte discovery, subscribers are faced with a choice of to settle or try to clear their name, whether or not they have ever infringed any copyright, and whether or not they have ever heard of the BitTorrent protocol. As Plaintiff knows, a subscriber's decision to settle often is wholly unrelated to whether or not they have infringed any copyrighted work, and is influenced solely by a desire to avoid the embarrassment and legal expense required to establish innocence. Plaintiff may continue to threaten future suits until the statute of limitations expires, despite the clear lesson of the recent wave of suits, only a small fraction of those threatened are ever served in a copyright infringement action. The reason is simple: Plaintiff has no idea whether the subscriber committed copyright infringement, and, if they actually served a summons and complaint on a subscriber (rather than simply threatening to do so), they would immediately expose themselves to potential liability for costs and attorney fees under 17 U.S.C.§ 505.

## III.   LEGAL ARGUMENT

### A. <u>Undue Annoyance and Embarrassment</u>

Defendants may move to quash a subpoena under Federal Rules of Civil Procedure 26 and/or 45 when the subpoena will subject her, him, or it to undue burden, annoyance and/or embarrassment. As one court explained, "once the plaintiff obtains the identities of the IP subscribers through early discovery, it serves the subscribers with a settlement demand . . . the subscribers, often embarrassed about the prospect of being named in a suit involving pornographic movies, settle. . ." *MCGIP v. Does 1-149,* No. 11-02331 (ECF No. 14 at note 5), 2011 WL 4352110, at *4 (N.D. Cal. Sept. 16, 2011). See also *On the Cheap, LLC, v. Does 1-5011*, No. C10-4472 (ECF No. 66 at 11), 2011 WL 4018258 at *11 (N.D. Cal. Sept. 6, 2011) (plaintiff's settlement tactics leave defendants with "a decision to either accept plaintiff's demand or incur

significant expense to defend themselves" and finding that this does not "comport with the 'principles of fundamental fairness'"). Courts have recognized that the plaintiff "would likely send settlement demands to the individuals whom the ISP identified as the IP subscriber. 'That individual – whether guilty of copyright infringement or not – would then have to decide whether to pay money to retain legal assistance to fight the claim that he or she illegally downloaded sexually explicit materials, or pay the settlement demand. This creates great potential for a coercive and unjust settlement.'" *SBO Pictures, Inc., v. Does 1-3,036*, No. 11-4220 (ECF No. 14 at 8), 2011 WL 6002620, at *8 (N.D. Cal. Nov. 30, 2011) (quoting *Hard Drive Prods., Inc., v. Does 1-130,* No. C-11-3826 (ECF No. 16), 2011 U.S. Dist. LEXIS 132449 at *9 (N.D. Cal. Nov. 16, 2011).

As the Central District noted, "[t]he Court has previously expressed concern that in pornographic copyright infringement lawsuits like these, the economics of the situation makes it highly likely for the accused to immediately pay a settlement demand. Even for the innocent, a four-digit settlement makes economic sense over fighting the lawsuit in court – not to mention the benefits of preventing public disclosure (by being named in a lawsuit) of allegedly downloading pornographic videos." *Ingenuity 13 LLC. v. John Doe*, No. 12-8333 (ECF No. 48 at 7) (C.D. Cal. Feb. 7, 2013). Another court confirmed, "[T]he court will not assist a plaintiff who seems to have no desire to actually litigate but instead seems to be using the courts to pursue an extrajudicial business plan against possible infringers (and innocent others caught up in the ISP net)." *Hard Drive Prods., Inc. v. Does 1-90*, No. 11-03825 (ECF No. 18 at 11), 2012 WL 1094653, at *7 (N.D. Cal. Mar. 30, 2012).

In a July 6, 2015 decision, the Southern District of New York Court denied the plaintiff permission to issue a Rule 45 subpoena:

**DEFENDANT'S MOTION TO QUASH SUBPOENA**

Recent empirical studies show that the field of copyright litigation is increasingly being overtaken by "copyright trolls," roughly defined as plaintiffs who are "more focused on the business of litigation than on selling a product or service or licensing their [copyrights] to third parties to sell a product or service." Matthew Sag, *Copyright Trolling, An Empirical Study*, 100 IOWA L. REV. 1105, 1108 (2015). "The paradigmatic troll plays a numbers game in which it targets hundreds or thousands of defendants, seeking quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim." *Id*. The lawsuits most frequently target anonymous John Does for alleged infringement related to the use of BitTorrent. Indeed, of "the 3,817 copyright law suits filed in 2013, over 43% were against John Does and more than three-quarters of those related to pornography." *Id.* at 1108-09. But almost none ever reaches a hearing. Rather, the 'lawsuits are filed to take advantage of court ordered discovery under Fed. R. Civ. P. 26(d) to break the veil of anonymity that separates IP addresses from the account information of actual human beings.' *Id*. at 1109; see also *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012). They then use this information to quickly negotiate settlements on mass scale without any intention of taking the case to trial. See, e.g., *Media Prods., Inc., DBA Devil's Film v. John Does 1-26*, No. 12-cv-3719, at 4 (S.D.N.Y. June 18, 2012) (explaining that the settlements in these BitTorrent cases are "are for notoriously low amounts relative to the possible statutory damages, but high relative to the low value of the work and minimal costs of mass litigation. Cases are almost never prosecuted beyond sending demand letters and threatening phone calls.")

*Malibu Media, LLC, v. John Doe subscriber assigned IP address 66.108.67.10*, No. 1:15-cv-04369 (ECF No. 10 at 5-6) (S.D.N.Y. July 6, 2015) (Hellerstein, J.) (emphasis added).

Because of the track record and tactics of plaintiffs like Strike 3 Holdings, LLC, herein, this defendant's privacy interests are at stake and Defendant no doubt will be subjected to annoyance, harassment, and undue burden and expense if this Court does not grant the requested relief or otherwise prohibit plaintiff from obtaining Movant's identity and address.

**DEFENDANT'S MOTION TO QUASH SUBPOENA**

### B. Plaintiff's Discovery Request Will Not Identify the Alleged Offender

Plaintiff's subpoena must be quashed because Plaintiff will be unable to show that any actual infringer is the subscriber John Doe, and not some third person in this Defendant's business or household, or a family guest or customer, or a neighbor, or a stranger driving by who may have hacked or leeched this defendant's internet access.

As the Central District noted in a series of these cases a couple of years ago

> The subscriber information is not a reliable indicator of the actual infringer's identity. Due to the proliferation of wireless internet and wireless-enabled mobile computing (laptops, smartphones, and tablet computers), it is commonplace for internet users to share the same internet connection, and thus, share the same IP address. Family members, roommates, employees, or guests may all share a single IP address and connect to BitTorrent. If the subscriber has an unsecured network, it is possible that the actual infringer could be a complete stranger standing outside the subscriber's home, using the internet service and who's internet activity is being attributed to the unknowing subscriber's IP address. Thus, obtaining the subscriber information will only lead to the person paying for the internet service and not necessarily the actual infringer.
>
> It is even more unlikely that early discovery will lead to the identities of Defendants given how commonplace internet usage outside one's home has become. An increasing number of entities offer publicly-accessible internet service; consider coffee shops, workplaces, schools, and even cities. Mobile-computing allows internet users and copyright infringers, to connect to the internet in any such location. A given entity may have hundreds or thousands of users in a one to two-month period. Obtaining the subscriber information in
> these cases will only lead to name of the entity and is unlikely to yield any identifying information about the actual infringer. Accordingly, granting early discovery for the subscriber information is not very likely to reveal the identities of Defendants.

*Malibu Media, LLC, v. John Does, No. 2:12-01642* (ECF No. 32 at 4-5) (D.C. Cal. Oct. 10, 2012) (internal citations omitted).

Plaintiff here cannot demonstrate that the requested discovery will even lead to identification of the proper John Doe defendant. The prevailing accepted wisdom in district courts across the country is that an IP address does not equate to the infringer of a plaintiff's copyright and that merely identifying the individual who pays the internet bill associated with a particular ISP account does not identify the individual who may have infringed a copyright via that IP address. As the court in SBO Pictures understood, "the ISP subscriber to whom a certain IP address was assigned may not be the same person who used the internet connection for illicit purposes." *SBO Pictures, Inc., supra*, 2011 WL 6002620, at *3. *See also VPR Internationale v. Does 1-1,017*, No. 11-02068 (ECF No. 15 at 2 ), 2011 WL 8179128 (C.D. Ill. Apr. 29, 2011) ("Where an IP address might actually identify an individual subscriber and address the correlation is still far from perfect . . . . The infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment.")

"Several courts have found it troubling that the subscriber associated with a given IP address may not be the person responsible for conduct traceable to that IP address." *Malibu Media, LLC v. Doe*, No. 8:13-cv-00365 (ECF No. 60 at 7), 2014 WL 7188822, at *4 (D. Md. Dec. 16, 2014); *see Patrick Collins, Inc. v. Doe 1*, 288 F.R.D. 233, 237-39 (E.D.N.Y. 2012) (an IP address is insufficient to identify an infringer because "the actual device that performed the allegedly infringing activity could have been owned by a relative or guest of the account owner, or even an interloper without the knowledge of the owner"); *Patrick Collins, Inc. v. John Does 1-4*, No. 1:12-cv-02962 (ECF No. 7 at 2), 2012 WL 2130557, at *1 (S.D.N.Y. June 12, 2012) (Baer, J.) ("The fact that a

copyrighted work was illegally downloaded from a certain IP address does not necessarily mean that the owner of that IP address was the infringer." All cases cited in *Manny Film, LLC, v. John Doe Subscriber Assigned IP Address 66.229.140.101*, No. 0:15-cv-60446 (ECF No. 10) (S.D. Fla. April 8, 2015).

Indeed, other decisions have noted the non-connection between a mere IP address and the actor:

> The fact that a copyrighted work was illegally downloaded from a certain IP address does not necessarily mean that the owner of that IP address was the infringer. Indeed, the true infringer could just as easily be a third party who had access to the internet connection, such as a son or daughter, houseguest, neighbor, or customer of a business offering internet connection." *Patrick Collins, Inc. v. Does 1-6,* No. 1:12-cv-02964 (ECF No. 7), 2012 WL 2001957, at *1 (S.D.N.Y. June 1, 2012) (Oetkin, J.) (internal citations omitted); *see also In re BitTorrent Adult Film Copyright Infringement Cases*, No. 12-01147 (ECF No. 4), 2012 WL 1570765 (E.D.N.Y. May 1, 2012) ("[T]he assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that has grown more so over time."); *Digital Sin, Inc. v. John Does 1-176*, 279 F.R.D. 239, 242 (S.D.N.Y. 2012) (Nathan, J.) (Judge Nathan finding that approximately **30% of John Does identified by their internet service providers are not the individuals who actually downloaded the allegedly infringing films)**. The risk of misidentification is great in a world with ubiquitous Wi-Fi, and given courts' concerns that these sorts of allegations - especially by this plaintiff - are likely to coerce even innocent defendants into settling, the risk of misidentification is important to protect against.

*Malibu Media, LLC, v. John Doe subscriber assigned IP address 66.108.67.10*, No. 1:15-cv-04369 (ECF No. 10 at 9-10) (S.D.N.Y. July 6, 2015) (emphasis added). [1]

---

[1] Courts in other districts also have concluded that an IP address "may not be a sufficient basis on which a plausible claim can lie against a subscriber." *Malibu Media v. Doe,* No. 8:13-cv-00365 (ECF No. 60 at 7), 2014 WL 7188822, at *4 (D. Md. Dec. 16, 2014); *see Elf- Man, LLC v. Cariveau*, No. 2:13-00507 (ECF No. 78), 2014 WL 202096, at *2 (W.D. Wash. Jan. 17, 2014) ("While it is possible that one or more of the named defendants was personally involved in the download, it is also possible that they simply failed to secure their connection against third-party interlopers."); *Malibu Media, LLC v. Tsanko*, No. 12-3899, 2013 WL 6230482, at *10 (D.N.J. Nov. 30,

Thus, because the discovery sought by Plaintiff in this case only will identify the ISP subscriber and not the infringer, the discovery sought in the subpoena is not likely to lead to the identity of the allegedly infringing Doe defendant or allow Plaintiff to effectuate service thereon. Defendant submits that this Court should heed the concerns expressed, *supra*, (1) about the coercive procedures typically utilized by Plaintiff to extract and extort settlements from putative defendants; and (2) disclosing Defendant's name and address will reveal only the internet subscriber – not a person likely to have committed the acts complained of (if they were committed at all). Accordingly, there is good cause for this Court to Quash the Subpoena issued to Charter to prevent the release of this defendant's identity.

## C. Defendant Has Legally Protected Privacy Interest

Rule 45 of the Federal Rules of Civil Procedure, which governs the issuance of subpoenas, provides that "[o]n timely motion, the issuing court must quash or modify the subpoena that ... requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(c)(3)(A)(iii). Such protected matter includes that which is protected by an individual's right to privacy. Although courts have not, as a general matter, recognized the right of non-parties to quash a subpoena issued to another non-party, courts have found non-party standing because of "the nature of the information sought." *See First Indem. of Am.*

---

2013) ("The Court questions whether these allegations are sufficient to allege copyright infringement stemming from the use of peer-to-peer file sharing systems where the defendant-corporation is connected to the infringement solely based on its IP address. It may be possible that defendant is the alleged infringer that subscribed to this IP address, but plausibility is still the touchstone of Iqbal and Twombly."); *AF Holdings LLC v. Rogers*, No. 3:12-cv-01519 (ECF No. 14), 2013 WL 358292, at *3 (S.D. Cal. Jan. 29, 2013) ("Due to the risk of 'false positives,' an allegation that an IP address is registered to an individual is not sufficient in and of itself to support a claim that the individual the touchstone of Iqbal and Twombly."); *AF Holdings LLC v. Rogers*, No. 12-cv-1519, 2013 WL 358292, at *3 (S.D. Cal. Jan. 29, 2013) ("Due to the risk of 'false positives,' an allegation that an IP address is registered to an individual is not sufficient in and of itself to support a claim that the individual is guilty of infringement."). Accord, *Manny Film, LLC, v. John Doe Subscriber Assigned IP Address 66.229.140.101*, No. 0:15-cv-60446 (ECF No. 10) (S.D. Fla. April 8, 2015).

*Ins. Co. v. Shinas*, No. 03 Civ. 6634, 2005 WL 3535069, at *3 (S.D.N.Y. Dec. 23, 2005). Standing may be found when the movant "has a sufficient privacy interest in the confidentiality of the records sought," *ADL, LLC v. Tirakian*, No. CV 2006-5076(SJF)(MDG), 2007 WL 1834517, at *2 (E.D.N.Y. June 26, 2007). In the instant case, Doe's right to privacy is protected by the California Constitution.

In *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal.4th 1, 35 (1994), the California Supreme Court "set forth in detail the analytic framework for assessing claims of invasion of privacy under the state Constitution." First, Doe must establish that he/she possesses a "legally protected privacy interest." *Id*. Second, Doe "must possess a reasonable expectation of privacy under the particular circumstances, including customs, practices, and physical settings surrounding particular activities." *Id*. Third, "the invasion of privacy complained of must be serious in nature, scope, and actual or potential impact to constitute an egregious breach of social norms, for trivial invasions afford no cause of action." *Id*. at 36. Finally, Doe's "interest must be measured against other competing or countervailing interests in a balancing test." *Id*.

### i.   Legally Protected Privacy Interest

In *Hill*, the California Supreme Court recognized that "an interest in precluding the dissemination or misuse of sensitive and confidential information (informational privacy) is a legally protected privacy interest." *Hill*, 7 Cal.4th at 35(internal citations omitted). Under *Hill*, this class of information is deemed private "when well-established social norms recognize the need to maximize individual control over its dissemination and use to prevent unjustified embarrassment or indignity." *Id*. Additionally, *Hill* recognized the interest "in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference ('autonomy privacy')." *Id*.

Here, it is clear that personal identifying information relating to accessing material is entitled to privacy protection as it may relates to Doe's intimate personal

DEFENDANT'S MOTION TO QUASH SUBPOENA

activities.

### ii.   Reasonable Expectation of Privacy

Doe utilizes an ISP Provider committed to protecting the identity and personal information of its customers. See Charter's privacy policy on *www.charter.com* Under these circumstances, Doe has a reasonable expectation that his or her personal identifying information will not be made public, and thus has a reasonable expectation that he or she will be able to anonymously use the Internet, take part in peer-to-peer chat rooms, and access various websites without the fear that his or her identity will be disclosed.

### iii.   Seriousness of the Invasion

If Doe's name is disclosed to Plaintiff and then put on a public document as a person who allegedly accesses, downloads, and distributes material related to the adult entertainment industry, such as the Provocative Material, Doe will be subject to the revelation of personal information, intimate activities, or similar private information, and threatens undue intrusion into Doe's personal life. Thus, allowing Plaintiff to access Doe's personal identifying information will result in an invasion of Doe's privacy.

### iv.   Balancing of the Interest Weighs in Favor of Quashing the Subpoena

It is well-settled that the First Amendment's protection extends to the Internet. *Reno v. ACLU*, 521 U.S. 844, 870 (1997); *In re Verizon Internet Servs., Inc.*, 257 F.Supp.2d 244, 259 (D.D.C.2003), rev'd on other grounds; *Recording Indus. Ass'n of America, Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229 (D.C. Cir.2003). Courts have recognized the Internet as a valuable forum for robust exchange and debate. *See Reno v. ACLU*, 521 U.S. 844 at 870 ("Through the use of chat rooms, any person with a phone line can become a town crier with a voice that resonates farther than it could from any soapbox.") The Internet is a particularly effective forum for the dissemination of anonymous speech. *See, e.g., Doe v. 2TheMart.Com,*

*Inc.*, 140 F.Supp.2d 1088, 1097 (W.D.Wash.2001) ("Internet anonymity facilitates the rich, diverse, and far ranging exchange of ideas ... ; the constitutional rights of Internet users, including the First Amendment right to speak anonymously, must be carefully safeguarded."); *United States v. Perez*, 247 F.Supp.2d 459, 461 (S.D.N.Y.2003) (noting the Internet's "vast and largely anonymous distribution and communications network.")

While Doe is aware that the First Amendment does not protect copyright infringement, and the Supreme Court, accordingly, has rejected First Amendment challenges to copyright infringement actions, Doe's meer participation in a peer-to-peer Internet communication system does not prove he or she engaged in copyright infringement, as peer to peer systems do have substantial and non-infringing uses. *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster Ltd*. 380 F.3d 1154, 1161(9th Cir. 2004).

Thus, the harm to Doe, if his or her personal information is disclosed in connection with the Provocative Material is much greater than the harm to Plaintiff if the information is kept secret. The harm and embarrassment suffered by Doe would be so great that, even though Doe denies any liability for copyright infringement, Doe is willing to tender to Plaintiff the price of the Provocative Material to ensure that he or she is not subject to embarrassment and shame through his or her name being placed on a public document relating to the use of the Provocative Material.

## IV.   CONCLUSION

Plaintiff herein names John Doe in this suit based solely on the allegation that John Doe's geographical location was assigned the IP address through which someone allegedly downloaded various works. As recognized by multiple courts throughout this country, this is an inappropriate basis for turning over Defendant's name and address to Plaintiff. For the reasons above, John

Doe respectfully requests that the Court enter of an order quashing the subpoena issued to Charter to prevent it from divulging defendant's name, address and other identifying information.


DATED:        January 24, 2019                    Respectfully submitted,


                                                  Songfong Tommy Wang
                                                  Wang IP Law Group, P.C.

                                                  Attorneys for Defendant,
                                                  John Doe subscriber assigned
                                                  IP address 172.115.62.221

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2019, a copy of the foregoing was electronically filed. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.



                              /s/ Ka In Chan
                              Ka In Chan

**DEFENDANT'S MOTION TO QUASH SUBPOENA**